UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


CHARLES K. JOHNSTONE Jr.,      ) 1:11CV2053
                               )
          Petitioner           ) JUDGE CHRISTOPHER BOYKO
                               ) (Magistrate Judge Kenneth S. McHargh)
     v.                        )
                               )
RICH GANSHEIMER,               )
                               )
          Respondent           ) REPORT AND
                               ) RECOMMMENDATION


McHARGH, MAG. J.

       The petitioner Charles K. Johnstone, Jr. ("Johnstone") filed a petition pro se

for a writ of habeas corpus arising out of his 2009 convictions for aggravated

robbery, felonious assault, and kidnapping in the Cuyahoga County Court of

Common Pleas.  (Doc. 1.)  In his petition, Johnstone raises three grounds for relief:

       1.  The state co[u]rts decision with prejudice, erroneously found
       petitioners conviction to be supported by sufficiency of the evidence in
       determining manifest weight of the evidence in violation of due
       process.

       2.  The adjudication of petitioners motion to suppress eyewitness
       identification at trial was a violation of due process permitting a
       fundamentally unreliable identification.

       3.  Petitioner was denied effective assistance of counsel guaranteed by
       Article I Section 10 of the Ohio Constitution and the 6th and 14th
       Amendments to the United States Constitution.

(Doc. 1, § 12.)  The respondent has filed a Return of Writ (doc. 7), and Johnstone has

filed a Traverse (doc. 13).

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

> The victim, Issa Chbani, testified (through a translator) FN1 that on
> April 22, 2006, around 9:30 a.m., he had just entered his taxicab that
> was parked near his home on Clifton Boulevard in Cleveland when two
> men flagged him down.  This was Chbani's "first run of the day," and
> his cab was clean.  (Chbani testified that he cleaned his cab every
> night.) He picked up the two men and headed toward downtown with
> both men sitting in the back.  The man seated behind the front
> passenger seat (who Chbani later identified as Johnstone) asked if he
> could smoke a cigarette; Chbani gave him an empty coffee cup to use
> for his cigarette ashes.

> FN1.  Chbani indicated that Arabic is his first language.

The men told Chbani to exit at West 45th Street.  Once they reached
the corner of Franklin and Detroit, the men told him to hand over "all
his money." With a gun pointed to the back of his head, Chbani
complied, giving the $55 that he had on him.  But according to Chbani,
that was not enough money to satisfy them.  The man seated behind
the front passenger seat stated: "I want your money, your wallet, and
everything that you got." Chbani responded, "I have no money.  I have
nothing.  I'm only a taxi driver.  And that's all I have on me." Chbani
testified that the man then hit him in the back of his head with a
sharp metal object-either a knife or a gun; the man also struck his
right ear, exploding his eardrum and causing permanent hearing loss.
The attack lasted one to two minutes, during which he saw the
assailant face-to-face.  The other man sitting directly behind him also
had a weapon-a gun, but Chbani never saw his face.

Following the attack, Chbani called the police and later went to the
hospital where he received stitches on the top of his head, his forehead,
and his right ear.

Immediately following the incident, the police recovered a single
cigarette butt from the taxi.  The police submitted the cigarette butt
and the coffee cup that Chbani had in his taxi for DNA testing.  The
police further photographed Chbani's taxi and his visible injuries.

Two years later, the police contacted Chbani and notified him that they had a suspect based on DNA evidence collected from the cigarette butt recovered in the taxi. Presented with a photo array of six individuals, Chbani immediately identified Johnstone as the man who attacked and robbed him. At trial, Chbani also identified Johnstone as the assailant.

Cleveland detective James Kiefer testified that he was assigned the case in March 2008 after the police obtained a match on the DNA evidence collected from the taxi. Kiefer further testified that he ordered a photo array, which the photo lab compiled using profiles similar to Johnstone's. He then called the victim and arranged an interview. Prior to asking Chbani to identify the suspect, Kiefer told Chbani that DNA testing had been conducted on the cigarette butt. Kiefer also testified that he did not have any difficulty communicating with Chbani because he was "used to dealing with people with heavy accents."

On cross-examination Kiefer acknowledged that the lighting in Johnstone's photo was different than the other five photos. He attributed it to a "color correction problem."

Russell Edelheit, a forensic scientist with BCI, testified that he conducted the DNA testing on the cigarette butt and the cup recovered from the taxicab. He testified that the DNA profile from the cup was from an unknown male. He further testified that the DNA profile from the cigarette butt was a mixture consistent with contributions from Johnstone and the same unknown male. Edelheit also indicated that it is not uncommon to find a mixture of DNA on cigarette butts.

The state rested, and Johnstone moved for a Crim.R. 29 acquittal, which the trial court denied.

Verdict and Sentence

The trial court charged the jury on the five counts of the indictment and also included an instruction on aiding and abetting. The jury found Johnstone not guilty on count one but guilty of the four remaining counts (aggravated robbery, kidnapping, and two counts of felonious assault). The jury also acquitted Johnstone on all the firearm specifications. At sentencing, the trial court merged the aggravated robbery and kidnapping counts and sentenced him to eight years in prison. The court also merged the two felonious assault

3

counts and sentenced Johnstone to eight years, to run concurrently with the other counts.

(Doc. 7, RX 12, at 3-6; State v. Johnstone, No. 92885, 2010 WL 1712237, at *1-*3 (Ohio Ct. App. Apr. 29, 2010).)

Johnstone filed a timely notice of appeal, and set forth the following seven assignments of error:

> 1.  The trial court erred in denying appellant's motion to suppress eyewitness identification and permitting a fundamentally unreliable identification in violation of due process.
>
> 2.  The trial court erred by not granting appellant a new trial.
>
> 3.  Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his counsel failed to offer expert testimony on eyewitness identification.
>
> 4.  The appellant's conviction for aggravated robbery was against the manifest weight of the evidence.
>
> 5.  The appellant's conviction for kidnapping was against the manifest weight of the evidence.
>
> 6.  The appellant's conviction for felonious assault in count four was against the manifest weight of the evidence.
>
> 7.  The appellant's conviction for felonious assault in count five was against the manifest weight of the evidence.

(Doc. 7, RX 10.)  The court of appeals affirmed the conviction.  (Doc. 7, RX 12; Johnstone, 2010 WL 1712237.)

Johnstone appealed that decision to the Supreme Court of Ohio, raising the following two propositions of law:

> 1. The decision of the Eighth District Court of Appeals is contrary to, and unreasonable to the application to the Ohio Supreme Court, and United States Supreme Court decisions.
>
> 2.  Appellant was denied counsel guaranteed by Article I, Section 10 of the Ohio Constitution, and the Sixth and Fourteenth Amendments of the United States Constitution.

(Doc. 7, RX 15.)  On Sept. 29, 2010, the state high court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 16; State v. Johnstone, 126 Ohio St.3d 1583, 934 N.E.2d 356 (2010).)

Johnstone then filed a timely petition for a writ of habeas corpus in this court.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Johnstone has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

The third ground of the petition alleges violations of the Ohio Constitution. The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Federal habeas relief is not available for a claimed violation of state law, thus any  alleged violation of the Ohio Constitution is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

## III. INSUFFICIENCY:  PROCEDURAL DEFAULT

The first ground of the petition claims that the state court "erroneously found petitioners conviction to be supported by sufficiency of the evidence in determining manifest weight of the evidence in violation of due process." (Doc. 1, § 12.)  From this wording, it is not initially clear whether Johnstone is asserting a claim of insufficiency of the evidence, or manifest weight of the evidence.[1]  In support, Johnstone asserts:

> The State supported insufficient DNA evidence with unreliable
> eyewitness identification that was tainted, unduly suggestive, and
> blatantly coerced, to bring a wrongful conviction to the Petitioner.  The
> DNA evidence corroborated by witness testimony conclusively linked to
> an unknown male, to be the principle offender, whom the Petitioner is
> wrongly imprisoned.  The state Forensic Scientist and expert witness
> on DNA presented undisputed evidence and testimony that it could not
> be determined from the test results, when, where, or how, the
> petitioners DNA was contributed to the mixture of DNA found on the

---

[1]  A federal habeas court has no power to grant habeas relief on the basis that a state conviction is against the weight of the evidence.

cigarette butt [in] question.  In fact the Petitioners DNA can only conclusively link him to have come into contact with the cigarette, not the crime.  And the prosecution failed to prove otherwise.  The Petitioner was shamed, and prejudiced by the disregard and misinterpretation of the factual evidence.

(Doc. 1, § 12.)  In his traverse, Johnstone states that his conviction is based on insufficient evidence.  (Doc. 13, at 3; see also doc. 13, at 34-35.)  The court finds that the first ground is based on a claim of insufficiency of the evidence.

The respondent contends that the first ground of the petition was not fairly presented as a constitutional issue to the appellate court on direct review.  (Doc. 7, at 8, 15-17.)  The respondent points out that the fourth, fifth, sixth, and seventh assignments of error on direct appeal were argued, and decided, under a manifest weight of the evidence standard, not as a sufficiency of the evidence claim.  (Doc. 7, at 8.)

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).  Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)).  The respondent argues that the first claim was not properly raised in state court.

As respondent correctly points out, the fourth, fifth, sixth, and seventh assignments of error on direct appeal were raised as "manifest weight of the evidence" claims, and addressed on that basis by the state court of appeals.  See doc.

8

7, RX 10, and RX 12, at 12-13; Johnstone, 2010 WL 1712237, at *5-*6.  Johnstone now raises a claim of insufficiency of the evidence.

The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Brandon v. Stone, No. 06-5284, 2007 WL 786330, at *1 (6th Cir. March 15, 2007) (citing Williams v. Bagley, 380 F.3d 932, 969 (6th Cir. 2004)).  Any issues which were not fairly presented to the state courts cannot be considered here. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).

Although Johnstone later attempted to raise an insufficiency claim in his appeal to the Supreme Court of Ohio (see doc. 7, RX 15, at 10-11), that court will not consider a constitutional question which was not raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007); City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971). Johnstone can no longer raise this claim in state court, as it would be barred on the basis of res judicata.  Leroy, 757 F.2d at 99.

Johnstone cannot return to state court to exhaust this claim because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following

9

remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).  State law no longer would permit Johnstone to raise the insufficiency claim, hence it is defaulted.  See Williams, 460 F.3d at 806; Adams, 484 F.Supp.2d at 769.

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)).  Where state court remedies are no  longer available to the petitioner, procedural default and not exhaustion bars habeas review.  Id.  Where the petitioner fails to demonstrate cause and prejudice to excuse the default, the claim is barred.  Id. at 807.

Absent a showing of cause and prejudice to excuse the procedural default, the court will not review the merits of the claim.  Lott v. Coyle, 261 F.3d 594, 612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).  Although he outlines the relevant factors, Johnstone does not establish cause and prejudice in his traverse.  See generally doc. 13, at 31-32.  The first ground is procedurally defaulted.


## IV.  UNRELIABLE IDENTIFICATION

The second ground is that the state court's "adjudication of petitioner's motion to suppress eyewitness identification at trial was a violation of due process permitting a fundamentally unreliable identification."  (Doc. 1, § 12.)  In support of his claim, Johnstone states:

10

The Eighth District Appellate Court decided that the trial court erred in denying the Petitioner's Motion to Suppress the witness identification.  Establishing that the photo-array identification and procedure were tainted, and unduly suggestive.  And because the witness was unable to identify the Petitioner as his assailant at confrontation, his identification [was] unreliable.  Subsequently deciding the cumulative and clear errors to be harmless.  Notwithstanding the erroneous witness identification, the state is left with inconclusive DNA evidence that was unreliable to prove [Petitioner's] guilt beyond a reasonable doubt.  The DNA evidence was only conclusive in linking an unknown male.

(Doc. 1, § 12.)

The respondent argues that this claim is without merit, and should be denied.  Although the state court of appeals found that the trial court had erred in denying the motion to suppress, respondent notes the appellate court found that the error was harmless.  (Doc. 7, at 22.)

The state court addressed this issue as follows:

A motion to suppress presents a mixed question of law and fact.  State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Consequently, we give deference to the trial judge's factual findings, but we review the application of law to fact de novo.  Id.; see, also, State v. Davis, 8th Dist. No. 83033, 2004-Ohio-1908.  In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character.  State v. Harris, 2d Dist. No. 19796, 2004-Ohio-3570, ¶ 19; see, also, State v. Thompson, 8th Dist. No. 90606, 2009-Ohio-615, ¶ 32, citing State v. Page, 8th Dist. No. 84341, 2005-Ohio-1493.  "Stated differently, the issue is whether the identification, viewed under the totality of circumstances, is reliable despite the suggestive procedure."  State v. Willis (1997), 120 Ohio App.3d 320, 324-325, 696 N.E.2d 1072.

To determine reliability, the United States Supreme Court instructs courts to consider the following factors: "the opportunity of the witness

11

to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." Neil v. Biggers (1972), 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401.  The court must review these factors under the totality of the circumstances.  Id.

Here, we are troubled by the procedure employed in obtaining the photo array identification and find it to be unduly suggestive.  First, immediately prior to presenting the photo array to the victim, Det. Kiefer told him that the police received a match on the DNA collected, thereby informing him that the suspect's photo was in the array.  This court has previously held that telling a victim that the suspect's photo is in the array may render the identification procedure unduly suggestive.  See State v. Jones, 8th Dist. No. 85025, 2005-Ohio-2620. As we recognized in Jones, such a statement pressures a victim to choose someone, regardless of certainty, because the victim was told that the suspect was in the array.  Id. at ¶ 17.

Second, the record reveals that there was no translator present at the time of the identification.  Although Det. Kiefer testified that he had no trouble communicating with the victim, the same cannot be said about the victim.  Indeed, halfway through the suppression hearing, the court had to order a translator because the victim could not answer the defense counsel's basic questions.  It was abundantly clear that the victim did not understand what counsel was asking.

Finally, the array immediately draws the viewer's attention to Johnstone's photo.  As Det. Kiefer conceded at the suppression hearing, Johnstone appears to have a light shining on him.  He attributed the difference as a "color correction problem." Further, whereas the other five all appear to have the same darkergreen background, his is the only light-gray background.  And while we recognize that generally a photo array is not unduly suggestive due solely to different backgrounds, see State v. Carter, 2d Dist. No. 21145, 2006-Ohio-2823, ¶ 33, citing State v. Nelson, 8th Dist. No. 81558, 2003-Ohio-3219, the flaws in the instant identification procedure were not limited solely to the differing background.

Based on these combined circumstances, we find that Johnstone satisfied his burden of demonstrating that the identification procedure was unduly suggestive.

We now turn to the issue of whether the identification may still be considered reliable.  We find that it cannot.  Applying the Biggers factors, and based on the totality of the circumstances, we find that the following facts render the identification unreliable: (1) the photo array was presented two years after the crime; (2) Chbani's only description of the suspects was very general (i.e., skin color and approximate height, weight, and age)-he provided no description regarding hair or facial features; (3) Chbani was unable to identify Johnstone on direct examination during the suppression hearing; and (4) the entire encounter where Chbani viewed Johnstone face-to-face lasted a short amount of time, i.e., "one to two minutes." And although Chbani was certain in his identification of Johnstone at the time of the photo array, we find this fact insignificant given the suggestiveness of the identification procedure; nor does this single factor outweigh the others under the Biggers test.  Finally, we note that the absence of a translator during the identification procedure further undermines the reliability of the identification.

Nonetheless, although we find that the trial court erred in denying the motion to suppress the identification, we find that error to be harmless.  Under Crim.R. 52(A), harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights." The Ohio Supreme Court has recognized that the trial court's failure to suppress unreliable identification testimony is harmless when it is clear that the defendant would be convicted even without the victim's identification.  See State v. Keene (1998), 81 Ohio St.3d 646, 658, 693 N.E.2d 246.  Here, we find that the record contains overwhelming evidence of Johnstone's guilt notwithstanding the identification testimony.

Chbani's testimony established that the first and only trip he made on the day of the incident was with the two perpetrators, where one of the perpetrators was smoking.  He further testified that he cleaned his taxi every evening.  (And the photos submitted into evidence corroborated this testimony-apart from the blood spots caused by Chbani's injuries, the taxi appeared clean.) Immediately following the incident, the police recovered a single cigarette butt from the back floor of the taxi that Chbani indicated was dropped by one of the perpetrators.  Significantly, the police later determined that the single cigarette butt contained Johnstone's DNA.  Moreover, Chbani's general description of Johnstone immediately following the incident was accurate and further corroborated the other evidence linking

13

Johnstone.  Therefore, based on this evidence, we find that the jury would have found Johnstone guilty even without the identification testimony.

(Doc. 7, RX 12, at 6-10; Johnstone, 2010 WL 1712237, at *3-*5.)

The state court of appeals explicitly applied the analysis set forth in the U.S. Supreme Court's decision in Neil v. Biggers, therefore the initial question before this court is whether the state court's decision involved an unreasonable application of clearly established federal law.  The state court's decision can not be found unreasonable simply because this court would consider  the state decision to be erroneous or incorrect.  Rather, the court must determine that the decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The court does not undertake a de novo review, in a case where the state court addressed the merits of the constitutional claim.  See, e.g., Price, 538 U.S. at 638-639.  Rather, Johnstone must show that the state court decision was either contrary to, or an unreasonable application of, clearly established federal law, or was based upon an unreasonable determination of the facts.  Id. at 639.

An identification will violate a defendant's right to due process if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United States, 390 U.S. 377, 384 (1968); Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005), cert. denied, 546 U.S. 1100 (2006).  "It is the likelihood of misidentification which violates a defendant's right to due process."  Howard, 405 F.3d at 469 (quoting Neil

14

v. Biggers, 409 U.S. 188, 198 (1972)).  It is the petitioner's burden of proof to show
that the procedure was unduly suggestive.  Tipton v. Carlton, No. 06-5496, 2008
WL 5397785, at *4 (6th Cir. Dec. 29, 2008), cert. denied, 130 S.Ct. 279 (2009) (citing
Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir. 1994)).  The state court of
appeals found that Johnstone had met his burden, and found that the identification
procedure was unduly suggestive.  (Doc. 7, RX 12, at 9; Johnstone, 2010 WL
1712237, at *4.)

If the petitioner meets the burden of showing impermissible suggestiveness,
then a court will evaluate the reliability of the identification under the totality of
the circumstances.  Tipton, 2008 WL 5397785, at *4; Haliym v. Mitchell, 492 F.3d
680, 704 (6th Cir. 2007); United States v. Sullivan, 431 F.3d 976, 985 (6th Cir.
2005).  "Reliability is the linchpin in determining the admissibility of identification
testimony."  Howard, 405 F.3d at 469 (quoting Manson v. Brathwaite, 432 U.S. 98,
114 (1977)).  In assessing reliability, the court considers:

> . . . the totality of the circumstances, including the factors described in
> Manson and Biggers: (1) the opportunity of the witness to view the
> defendant at the initial observation; (2) the witness's degree of
> attention; (3) the accuracy of the witness's prior description of the
> defendant; (4) the level of certainty shown by the witness at the
> pretrial identification; and (5) the length of time between the initial
> observation and the identification.

Howard, 405 F.3d at 472 (citing Manson, 432 U.S. at 114, Neil v. Biggers, 409 U.S.
at 199-200).  The state court of appeals applied the Biggers factors, and found that
the identification procedure was unreliable.  (Doc. 7, RX 12, at 9; Johnstone, 2010
WL 1712237, at *4.)

15

A trial court's rulings on identification issues are subject to "harmless error" review.  See, e.g., Moore v. Illinois, 434 U.S. 220 (1977).  Here, the state court of appeals applied harmless error review, and ruled that "although we find that the trial court erred in denying the motion to suppress the identification, we find that error to be harmless."  (Doc. 7, RX 12, at 9; Johnstone, 2010 WL 1712237, at *4.)  The appellate court found that "the record contains overwhelming evidence of Johnstone's guilt notwithstanding the identification testimony."  (Doc. 7, RX 12, at 10; Johnstone, 2010 WL 1712237, at *4.)  The court summarized the evidence as follows:

> Chbani's testimony established that the first and only trip he made on the day of the incident was with the two perpetrators, where one of the perpetrators was smoking.  He further testified that he cleaned his taxi every evening.  (And the photos submitted into evidence corroborated this testimony-apart from the blood spots caused by Chbani's injuries, the taxi appeared clean.)  Immediately following the incident, the police recovered a single cigarette butt from the back floor of the taxi that Chbani indicated was dropped by one of the perpetrators.  Significantly, the police later determined that the single cigarette butt contained Johnstone's DNA.  Moreover, Chbani's general description of Johnstone immediately following the incident was accurate and further corroborated the other evidence linking Johnstone.  Therefore, based on this evidence, we find that the jury would have found Johnstone guilty even without the identification testimony.

(Doc. 7, RX 12, at 10; Johnstone, 2010 WL 1712237, at *5.)

The Supreme Court has affirmed that a federal habeas court assesses the prejudicial impact of constitutional trial error under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Fry v. Pliler, 551 U.S. 112 (2007).  Under Brecht, the petitioner has to establish that the

16

trial error had a "substantial and injurious effect or influence in determining the jury's verdict," in order to obtain habeas relief.  Brecht, 507 U.S. at 637-638; see also Ruelas v. Wolfenbarger, 580 F.3d 403, 411 (6th Cir. 2009), cert. denied, 130 S.Ct. 3322 (2010).  To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict.  Mitzel v. Tate, 267 F.3d 524, 534 (6th Cir. 2001), cert. denied, 535 U.S. 966 (2002) (citing Brecht, 507 U.S. at 637).

Even where the state court applied harmless error review, the habeas court reviews the constitutional error under Brecht, and does not address the issue as whether the state court unreasonably applied Chapman v. California, 386 U.S. 18 (1967) (which governs harmless error review on direct appeal).  Bauberger v. Haynes, 632 F.3d 100, 104-105 (4th Cir.), cert. denied, 132 S.Ct. 189 (2011); Ruelas, 580 F.3d at 411-412.  The Supreme Court has clarified that a habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman. Fry, 551 U.S. at 121-122 (internal citations omitted); see also Ruelas, 580 F.3d at 411 (citing Vasquez v. Jones, 496 F.3d 564, 575 (6th Cir. 2007)).

Johnstone argues that, after having found the photo array evidence unduly suggestive and unreliable, the conviction must have relied on "inconclusive DNA evidence that was unreliable to prove [his] guilt beyond a reasonable doubt."  (Doc.

17

1, § 12.)  The respondent counters that "[t]he non-suppression evidence produced at trial was of sufficient strength and credibility to support a determination that the suppression evidence did not have a substantial and injurious effect or influence in determining the convictions."  (Doc. 7, at 23.)  For example, the state court of appeals pointed to testimony that DNA from the cigarette was consistent with Johnstone's.  (Doc. 7, RX 12, at 5; Johnstone, 2010 WL 1712237, at *2.)

Johnstone has failed to demonstrate the improper photo array identification had a substantial and injurious effect or influence in determining the jury's verdict. See, e.g., doc. 13, at 48-50.  He has failed to show more than a "reasonable possibility" that the error  contributed to the jury's verdict.  The petition should not be granted on the basis of the second ground.


## V.  INEFFECTIVE ASSISTANCE:  PROCEDURAL DEFAULT

The third ground of the petition alleges ineffective assistance of trial counsel. Johnstone asserts:

> Counsel failed to offer expert testimony on eyewitness identification against unreliable, and coerced, witness identification.  Such expert testimony would have benefitted the defense by enabling the jury to properly assess and weigh the erroneous eyewitness testimony.

(Doc. 1, § 12.)

The respondent contends that this ground was procedurally defaulted.  The respondent concedes that Johnstone raised this ground in his direct appeal.

18

However, respondent points out that Johnstone did  not raise this same ground in his subsequent appeal to the Supreme Court of Ohio.  (Doc. 7, at 24.)

In his third assignment of error, Johnstone argued he was denied effective assistance of counsel because "his counsel failed to offer expert testimony on eyewitness identification."  (Doc. 7, RX 10.)  However, Johnstone did not press this particular claim before the state high court, instead focusing on counsel's alleged failures at the suppression hearing.[2]  (Doc. 7, RX 15, at 12.)

To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).

As discussed earlier, a claim must be presented to the state courts under the same theory in which it is later presented in federal court, if it is to be considered for habeas review.  Wong, 142 F.3d at 322; see also Brandon 2007 WL 786330, at *1.  The claim based on counsel's alleged failure to offer expert testimony on eyewitness identification at trial was not presented to the Supreme Court of Ohio.

---

[2]  Johnstone clarifies that he is not pressing the issues from the suppression hearing in his habeas petition.  (Doc. 13, at 50.)

Any issues which were not fairly presented to the state courts cannot be considered here.  Baldwin, 541 U.S. at 29; Jacobs, 265 F.3d at 415.

Johnstone cannot return to state court to exhaust this claim because arguments that could have been raised in an initial appeal (and were not) are barred from consideration on appeal following remand, under the doctrine of res judicata.  Hutton, 100 Ohio St.3d at 182, 797 N.E.2d at 956; Gillard, 78 Ohio St.3d at 549, 679 N.E.2d 276.  State law no longer would permit Johnstone to raise this ineffective assistance claim, hence it is defaulted.  See Williams, 460 F.3d at 806; Adams, 484 F.Supp.2d at 769.

Absent a showing of cause and prejudice to excuse the procedural default, the court will not review the merits of the claim.  Lott, 261 F.3d at 612.  Although he outlines the relevant factors, Johnstone does not establish cause and prejudice in his traverse.  See generally doc. 13, at 31-32.  The third ground is procedurally defaulted.


VI.  SUMMARY

The petition for a writ of habeas corpus should be denied.  The first and third grounds were procedurally defaulted.  As to the second ground, wherein the state appellate court found the constitutional error to be harmless, Johnstone failed to demonstrate that the improper photo array identification had a substantial and injurious effect or influence in determining the jury's verdict.

<u>RECOMMENDATION</u>

It is recommended that the petition for a writ of habeas corpus be denied.

Dated:  <u>Mar. 22, 2013</u>          <u>/s/ Kenneth S. McHargh</u>
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).